NEWELL v. NEAL.

1. MORTGAGES—REMEDY—EQUITY.—A mortgagee who assigns a bond and mortgage as part of the purchase money of a tract of land upon condition that assignee collect it, and apply the proceeds to extinguishment of liens on the lands purchased, has no equity to demand judgment against mortgagor for the amount of the mortgage debt, after the assignee has satisfied the mortgage and paid off the encumbrances on the lands purchased, with other funds.

2. RES JUDICATA.—The question of the validity of the family agreement, and assignment of the mortgage herein, *held* to be *res judicata*.

3. MORTGAGES—BONDS—LIMITATION OF ACTIONS.—Where a mortgagee assigned, conditionally, a bond and mortgage, and the assignee satisfied the mortgage on the record, and afterwards the mortgaged lands passed into hands of innocent purchasers without notice, upon breach of condition of the assignment, nothing but the bond exists, and action on the bond is barred in six years after notice to assignor of the satisfaction of the mortgage.

4. CONTRACTS.—This Court hesitates to declare one part of a contract void for want of consideration, and that another part is supported by a legal consideration.

Before EARLE, J., Anderson, February, 1896. Reversed.

Action in foreclosure by Alfred T. Newell against William A. Neal, J. Belton Watson, J. S. Fowler, Martha E. Watson, S. J. Watson, and J. Matt Cooley. The Circuit decree is as follows:

This was an action on the part of the plaintiff to foreclose a mortgage which he alleges has been executed and delivered by the defendant, Wm. A. Neal, to Mary E. Newell on the 3d day of March, 1881, on a certain tract of land described in the complaint herein, which he alleged had been assigned to him on July 25, 1894. All the defendants, except Wm. A. Neal, J. Belton Watson, and J. Matt Cooley, filed answers disclaiming any interest in the premises sought to be sold under foreclosure. The defendant, Cooley, set up a mortgage on the land covered by plaintiff's mortgage, which was conceded to be a prior mortgage to plaintiff's; his answer set out other issues which will be hereinafter noticed more fully. The defendants, Wm. A. Neal and J. Belton Watson, filed separate answers, in which the execution and delivery of the bond and mortgage, the basis of plaintiff's suit, were admitted, but alleging that said bond and mortgage had been duly assigned by Mary E. Newell to A. M. Neal, in payment for a tract of land she purchased from him on or about the 17th day of January, 1882, being before the alleged assignment to the plaintiff, and that plaintiff, before he took the assignment to himself, had full knowledge of said prior assignment, and that he also had

knowledge that on the 7th day of February, 1888, the said A.. M. Neal had duly satisfied said mortgage of record. That in the case of W. G. Watson *et al. v.* A. M. Neal *et al.*, as far back as 1888, in which case plaintiff, his assignor, and the defendant, W. A. Neal, all being codefendants, plaintiff and his assignor both swore that she had duly assigned and transferred said bond and mortgage to A. M. Neal, and at that time both had full knowledge of its satisfaction of record by A. M. Neal, the assignee; and the defendant, J. Belton Watson, alleged that as against him, an innocent purchaser of said land for value and without notice, both plaintiff and his assignor are estopped to set up said mortgage against the land in his possession. The defendant, Wm. A. Neal, admitted that he had sold and delivered said land to his codefendant, Watson, for value. There were other defenses in said answers besides those noticed, including a specific denial of the ownership of said bond and mortgage by plaintiff, but owing to the view I have taken of the case, it is not necessary to refer to them in this connection. The case having been previously referred to R. M. Burriss, probate judge, as special referee, to take the testimony and report it to the Court, came on to be heard by me, on the testimony taken by said special referee, at the November term of the Court at Anderson. After hearing the pleadings, testimony, and argument of counsel, I find, as facts, that on March 3, 1881, Wm. A. Neal executed and delivered the bond and mortgage set forth in the complaint to Mary E. Newell, mother of plaintiff; that on or about January 17, 1882, the said Mary E. Newell purchased from her father, A. M. Neal, a certain tract of land for $2,500, and in part payment assigned and transferred to said A. M. Neal the bond and mortgage set up herein. I further find that said land was purchased by Mary E. Newell from her father, to enable him to pay off his mortgage debts, which were liens not only on that land, the tract conveyed her, but also liens on other lands which he that day conveyed to her children. I find that at the time of the assignment

of said bond and mortgage to her father, A. M. Neal, it was agreed by and between the assignor and assignee that said bond and mortgage were to be applied to the extinguishment of the mortgage or lien debts on said land. I further find that A. M. Neal, assignee of that bond and mortgage, did not collect the proceeds and apply them to the extinguishment of the mortgage, but in violation of his agreement with the assignor, satisfied said mortgage of record on the 7th day of February, 1888. As I understand the testimony of the defendant, Wm. A. Neal, he does not claim to have paid off this mortgage, but simply claims that his father, who was the owner and holder thereof, voluntarily cancelled and satisfied the same. I further find as a fact, that plaintiff knew of this assignment and transfer of this bond and mortgage to A. M. Neal for years before he took assignment to himself, and that as far back as the spring of the year 1888, both he and his assignor, who was his mother, knew that A. M. Neal, the original assignee, had cancelled the same and had satisfied the mortgage of record. I further find that subsequent to the satisfaction of said mortgage of record by A. M. Neal, to wit: on December 22, 1892, the defendant, J. Belton Watson, bought the tract of land covered by said mortgage from the defendant, Wm. A. Neal, for value and without notice of the agreement between the original mortgagee, Mary E. Newell, and her assignee, A. M. Neal, her father, and without notice that the said A. M. Neal had received the assignment of the mortgage on the agreement to collect and apply the proceeds thereof to the payment of his mortgage debts, and without notice that he had not fully collected all that was due thereon. That before accepting a deed to said land he employed skilled attorneys to examine the records of the clerk's office and get him up a schedule of all liens that were open and outstanding against said lands as disclosed by the records of said office. That said schedule was furnished him by said attorneys after an examination of said office, and this mortgage was not on said schedule, evidently for

the reason that it had been then satisfied of record by A. M. Neal; and an examination of the record in the case of W. G. Watson *et al. v.* A. M. Neal *et al.*, disclosed the fact that Mary E. Newell, the mortgagee, had set out in her answer that she had transferred and assigned said bond and mortgage to A. M. Neal in part payment for a tract of land purchased by her from him, and an examination of the testimony in said case disclosed the fact that not only she, but her husband, S. S. Newell, and her son, Alfred T. Newell, the plaintiff herein, had all sworn that she had transferred said mortgage to A. M. Neal in part payment for a tract of land. So it is evident that J. Belton Watson bought said land without notice, that A. M. Neal, who was clearly the legal owner thereof at the time he had it satisfied of record, did not have the right to satisfy the same or to cancel it. I further find that it was not until July 25, 1894, that said mortgage was assigned to plaintiff, the bond being at the time lost, as it is now claimed by plaintiff. I further find, as a fact, it being conceded in the argument by plaintiff's attorneys that the land purchased by Mary E. Newell, and to pay in part the purchase money of which she assigned the mortgage hereinbefore mentioned to A. M. Neal, has never been sold to pay off the mortgage debts of A. M. Neal, but that said mortgage debts were entirely satisfied out of the proceeds of sale of other lands in which she had no beneficial interest.

I conclude as a matter of law from the foregoing facts, that as A. M. Neal did not collect said mortgage and apply the proceeds to the payment of his mortgage debts, as he had agreed with the assignor of said bond and mortgage to do, this agreement being a part of the consideration of assignment, he had no right in equity and good conscience to cancel said bond and no right to satisfy the said mortgage of record, and as the consideration for its assignment had failed, the purpose of the assignment being thereby defeated, said bond and mortgage became again the property of Mary E. Newell, the assignor, and by a future assignment by her,

the property of the plaintiff, Alfred T. Newell. I further conclude as matter of law, that as said mortgage had been legally assigned to A. M. Neal, he had the legal title to the same, and having, while thus holding legal title to said mortgage, satisfied the same of record, and that as the defendant, J. Belton Watson, purchased said land *bona fide* for value, and without notice of the equities existing between Mary E. Newell and A. M. Neal in reference to the use to be made of such mortgage, after the satisfaction of said mortgage by A. M. Neal, said mortgage can not now be foreclosed on the land in his possession. A familiar principle of equity is that where one of two innocent parties must suffer, he must bear the burden whose fault or laches was the occasion or cause of the suffering. Here it was Mary E. Newell who placed it in the power of A. M. Neal to satisfy said mortgage of record, and thereby to mislead J. Belton Watson to his injury, if this mortgage is allowed to be foreclosed on the land now in his possession. This would be manifestly inequitable, and cannot be allowed. I hold that Mary E. Newell is now estopped to set up this mortgage against the land in Watson's hands, and her assignee, the plaintiff herein, is also estopped. The assignee can have no higher equitable right in the premises than his assignor, and, besides, the assignee in this instance took with full knowledge of all the facts. While I hold that the mortgage can not, for the reason above set forth, be foreclosed, I still hold that Wm. A. Neal is liable personally to the plaintiff for the amount due on the bond secured by said mortgage, and that plaintiff is entitled to a personal judgment against him for that amount. As to all defendants except Wm. A. Neal, it is ordered, that the complaint herein be dismissed with costs.

Now, as to the mortgage held by the defendant, J. Matt Cooley, and which he seeks to foreclose herein, I hold that he is entitled to foreclose it on the land described in the complaint, now in the possession of the defendant, J. Belton Watson, for the amount due thereon on the 30th day of

January, 1890, with simple interest at the rate of seven per cent. per annum on said amount up to the date of the argument hereof, less the payment of $200 on October 19, 1891; and so holding, I have already granted the defendant, J. Matt Cooley, a judgment of foreclosure against Wm. A. Neal and J. Belton Watson for the sum of $3,968.39, and have authorized a personal judgment to be entered against them for said sum; and as I have held that Wm. A. Neal was personally liable to the defendant, J. Matt Cooley, for an additional sum of $113.59, by reason of his agreement to pay higher interest, I have authorized a personal judgment to be entered against him for this additional sum. The amount for which plaintiff, Alfred T. Newell, is entitled to have personal judgment against the defendant, Wm. A. Neal, on the mortgage debt is the sum of $2,047.51, and plaintiff is hereby given judgment against the said Wm. A. Neal for said sum.

From this decree the defendant, W. A. Neal, appeals, on the following exceptions:

I. Because his Honor erred in not dismissing plaintiff's complaint herein on defendant's motion for want of proof by way of nonsuit on the grounds: First. That plaintiff had not sued on a lost bond, and the proof offered should have been ruled out on the exception thereto, as it was not responsive to any issue tendered, and, further, that there was not sufficient proof of loss; and Second. That plaintiff's testimony and admission, under oath, showed that he had notice, as well as actual knowledge, of the fact, before bringing this action, that his mother and assignor, Mary E. Newell, had assigned said bond and mortgage in controversy to A. M. Neal, on January 17, 1882, and that A. M. Neal had satisfied and cancelled the same of record February 7, 1888, more than six years before the commencement of this action, as alleged by the defendant's answer.

II. Because, the plaintiff not being the legal owner and holder of said bond and mortgage, his Honor erred in allow-

ing the plaintiff judgment against the defendant, Wm. A. Neal.

III. Because his Honor erred in finding as a matter of fact that, at the time of the assignment of said bond and mortgage set up in said complaint by Mary E. Newell to her father, A. M. Neal, it was agreed by and between the assignor and assignee that said bond and mortgage were to be applied to the extinguishment of the mortgage or lien debts on the land purchased by Mary E. Newell from A. M. Neal, January, 1882.

IV. Because said Mary E. Newell, plaintiff's assignor, in the case of *W. G. Watson et al. v. A. M. Neal et al.*, 38 S. C., page 90, by her answer in said case, as well as by testimony, and the testimony of Alfred T. Newell, undertook to set up an agreement, and never pretended that there was any other agreement, between her and A. M. Neal, and the same having been declared invalid, it was an afterthought in Alfred T. Newell to undertake to set up a verbal agreement in this case, and which was not in reply to the issues tendered by defendant, or testimony offered on those issues, and his Honor erred in allowing said proof of agreement, and in not holding that the matter of said agreement was *res judicata.*

V. Because his Honor erred in not holding that Mary E. Newell and her assignee, Alfred T. Newell, are both now estopped by the allegations and proof in said Watson *v.* Neal, *supra*, from setting up this mortgage debt against Wm. A. Neal, because of the prior assignment thereof to A. M. Neal, to which both testified in said case more than six years before the commencement of this action; and at which time and in which suit they had notice that A. M. Neal had cancelled the said bond and mortgage, and that same was satisfied of record.

VI. Because if said bond and mortgage were assigned by Mary E. Newell to A. M. Neal on the 17th day of January, 1882, under the supposed agreement by him to collect the proceeds thereof and apply them to the extinguishment of

lien debts on the land which she purchased from A. M. Neal, and if A. M. Neal, in violation of said supposed agreement, and in fraud of her rights, cancelled said bond and satisfied the mortgage of record, and Mary E. Newell and Alfred T. Newell, her assignee, had notice of such cancellation and satisfaction thereof in the spring of 1888, more than six years before the commencement of this action, his Honor erred in not holding that the statute of limitations was a bar to plaintiff's action.

VII. Because his Honor having found from the testimony that said bond and mortgage was assigned by M. E. Newell, 17th January, 1882, to A. M. Neal, as part payment for the tract of land conveyed to her by A. M. Neal on that day, if the consideration had failed, in consequence of A. M. Neal's failure to perform the supposed agreement, the *status quo* could be restored only by an action by her against A. M. Neal or his personal representative; and his Honor erred in undertaking to cancel said agreement under this action, which is one for strict foreclosure, and could not be changed into an action for breach of contract or specific performance.

VIII. Because if either Mary E. Newell or her subsequent assignee had a cause of action in the premises by virtue of the breach of the supposed agreement of A. M. Neal, it would be against A. M. Neal or his personal representative on the breach of the contract made by him at the time said bond and mortgage were assigned, and not for foreclosure against Wm. A. Neal, and his Honor erred in not so holding.

IX. Because his Honor having found as a fact that said bond and mortgage had been assigned and transferred by Mary E. Newell, mortgagee, to A. M. Neal, in part payment of the purchase of a tract of land on or about 17th day of January, 1882, and that said tract of land has never been sold to pay off any of A. M. Neal's mortgage debts thereon, said mortgage debts having been paid off out of proceeds of other lands in which she had no beneficial interest, it was error for his Honor to hold that, as A. M.

Neal had not collected said bond and applied it to his mortgage debts under the supposed agreement, "said bond and mortgage became the property of said Mary E. Newell, the assignor, and by a future assignment by her the property of the plaintiff, Alfred T. Newell."

X. Because it is manifestly inequitable to allow Mary E. Newell to retain the said land purchased from A. M. Neal and then recover back said bond and mortgage which she had assigned as part payment of the purchase money thereof, when her said land so purchased had not been made to contribute towards payment of the mortgage debts, and his Honor erred in not so holding.

XI. Because his Honor erred in not holding that, as said bond and mortgage had been duly assigned by Mary E. Newell, neither she nor her subsequent assignee, with or without notice, could maintain an action to foreclose said mortgage or to recover judgment thereon against W. A. Neal, the maker thereof, for the amount alleged to be due thereon.

XII. Because the testimony as to the supposed agreement was excepted to at the time and before it was offered, as A. M. Neal was dead; and, further, that the alleged agreement had been adjudicated; and, further, that it was not in reply to any testimony offered by the defendant; and it was also objected to by Mr. Quattlebaum, representing the administrator of the estate of A. M. Neal; and his Honor erred in allowing proof of said supposed agreement.

XIII. Because there was no consideration for the supposed verbal agreement of A. M. Neal to apply the proceeds of said bond and mortgage to liens on land purchased from him by Mary E. Newell further than that which equity would give to enable her to apply the purchase money thereof in liquidation of encumbrances thereon, and beyond this the supposed agreement was without consideration, and reserved no legal or equitable right in her therein, and his Honor erred in not so holding.

XIV. Because said Mary E. Newell had no equity to

enforce said supposed agreement as against A. M. Neal, to apply the proceeds of the bond assigned to him as part of the purchase money of her land, until said land was made to contribute to the payment of mortgage debts thereon; and as his Honor found as a fact in said case that her said land was never made to contribute to said debts, but that they had been satisfied out of other lands of A. M. Neal, in which she had no interest, he erred in holding that said bond and mortgage reverted to her; whereas, in no event could said bond and mortgage revert to her, when she had never paid this part of the purchase money of said tract of land except by assignment of said bond and mortgage to A. M. Neal, when said land had never been made to contribute an amount of equal value in liquidation of mortgage debts thereon.

*Messrs. Tribble & Prince*, for appellant, cite: *Contract not rescinded unless parties put in statuo quo:* 1 S. & M. Ch., 126; 93 U. S., 55; 68 Ind., 476. *Statutes of limitations apply to the bond:* Code, 112; 44 S. C., 483; 4 DeS. Eq., 479; 33 S. C., 28; 23 S. C., 410 and 342; 19 S. C.; 477; 8 Rich. Eq., 130; 11 Rich. Eq., 33.

*Messrs. Bonham & Watkins* and *J. P. Carey*, contra, cite: *Nonsuit improper in equity:* 47 S. C., 307; 22 S. C., 332; 9 Wheat., 581. *Proof of loss of paper is matter of discretion, and not appealable:* 43 S. C., 370; 17 S. C., 587; 22 S. E. R., 1; 14 S. C., 593. *Cause of action not barred:* 14 S. C., 66; 33 S. C., 28; 38 S. C., 496. *Remedy:* 38 S. C., 199, 496; 33 S. C., 28. *Contract is rescinded by abandonment by one party:* 1 S. C., 277; 28 S. C., 224; 37 S. C., 8. *Equities between defendants:* 15 S. C., 394; 14 S. C., 66; 3 S. C., 25.

July 14, 1897. The opinion of the Court was delivered by

MR. JUSTICE POPE. This action was commenced in the Court of Common Pleas for Anderson County, in this State, on the 4th day of September, 1894. At first the defendant,

J. M. Stewart, as administrator of the estate of A. M. Neal, deceased, was not a party, but subsequently, on his petition therefor, was admitted as such. The complaint substantially made these allegations: That on the 3d day of March, 1881, the defendant, William A. Neal, made and delivered to Mary E. Newell his bond, whereby he promised to pay the said Mary E. Newell, one day-after its date, the sum of $1,000, with interest, and also to pay and discharge about $2,100, interest and costs growing out of two mortgages therein specified. That on the same day he executed a mortgage upon a plantation of land containing 245 acres to secure said bond, which mortgage was duly recorded in the office of register of mesne conveyance for Anderson County. That no part of said $1,000 has been paid. That the said Mary E. Newell, for value received, has assigned said bond and mortgage to the plaintiff, Alfred T. Newell, who is now owner and holder thereof. That the said $1,000, and the interest thereon, are still due and unpaid, and that the conditions of said bond and mortgage have been broken. That the parties named as defendants, except W. A. Neal and J. Belton Watson, have or claim some interest in or lien upon said mortgaged premises, which has accrued since the execution of plaintiff's said mortgage. The prayer of the complaint is in these words: "Wherefore, the plaintiff prays that the said mortgage may be foreclosed and the equity of redemption barred, the premises ordered to be sold, and the proceeds applied to the payment of plaintiff's debt, and execution awarded for the balance against the defendant, W. A. Neal, and for such other and further relief as may be just and proper."

The defendants, the Sullivan Hardware Company and J. S. Fowler, answered, denying any interest in the action. The defendant, J. Matt Cooley, in his answer, set up a mortgage superior in rank to that alleged to exist in favor of the plaintiff. But the defendants, William A. Neal and J. Belton Watson, while admitting the lien of the mortgage of J. Matt Cooley, stoutly contested the existence of the

debt and mortgage of the plaintiff, as follows: "That on or about the 17th day of January, 1882, Mary E. Newell duly transferred and assigned the bond and mortgage referred to in said complaint to A. M. Neal, for valuable consideration, and said A. M. Neal was the lawful owner and holder thereof until the 7th day of February, 1888, when he satisfied said bond, which was cancelled and delivered up to this defendant, and satisfaction thereof was duly executed and entered of record in the office of the register of mesne conveyance for said county of Anderson, in book 27, pages 670, 671; and since said assignment up to the present time said Mary E. Newell has not had said bond. or any legal right thereto, and the subsequent assignment thereof to the plaintiff, as alleged, is a nullity and conveyed no title. That said plaintiff had knowledge of the said assignment to A. M. Neal, as well as knowledge and notice of the satisfaction upon the record for a period of more than six years, without questioning the legal title of the said A. M. Neal to said bond and mortgage, and no question thereof has been made until since the title to the mortgaged property has been passed out of defendant's hands into the hands of *bona fide* purchasers, for value. That on or about the     day of February, 1888, the plaintiff, A. T. Newell, with his mother, said Mary E. Newell, being codefendants with the defendant in an action in the Court of Common Pleas for the county of Anderson, State aforesaid, in the case of W. G. Watson *et al. v.* A. M. Neal *et al.*, filed their answers now of record in said cause, wherein said Mary E. Newell set forth, in paragraph 4 of her said answer, that she had assigned said bond and mortgage to A. M. Neal, in part payment for 238 acres of land purchased from said A. M. Neal, and this defendant, in his answer, filed about the same time, in said cause, set up that said bond and mortgage so assigned by her to A. M. Neal had been satisfied and discharged of record; and this defendant submits that said plaintiff and Mary E. Newell are estopped now from denying said trans-

fer and assignment to A. M. Neal, and satisfaction thereof by him."

The defendant, J. Belton Watson, sets up in his answer, amongst other things, that he was a *bona fide* purchaser of said lands for full value without notice, reciting in his said answer all the foregoing facts set up in the answer of his codefendant, William A. Neal, particularly the answers as aforesaid, the assignment to A. M. Neal, and the entry of satisfaction of the bond and mortgage on the records of the office of register of mesne conveyance for Anderson County. The defendants, M. E. Watson and S. J. Watson, and Farmers' and Merchants' Bank, adopted the foregoing as their answers to the complaint. Under an order of Court, R. M. Burriss, Esq., as special referee herein, took and reported the testimony in the cause.

The action came on for trial before his Honor, Judge Earle, upon the pleadings and testimony, and on the 28th day of February, 1896, he filed his decree, the effect of which was that the plea of purchaser for full value without notice by the defendant, J. Belton Watson, was fully sustained, and the lands purchased by him were declared to be freed and discharged from the lien of any bond and mortgage set up by the plaintiff, but he decreed that the defendant, William A. Neal, was liable on the bond of $1,000, which had been assigned by Mary E. Newell to A. M. Neal, the principal and interest amounting at the date of the decree to $2,047.51, and he gave the plaintiff judgment against said A. M. Neal for that amount. He also adjudged that the defendant, J. Matt Cooley, was entitled to his judgment against the lands owned by defendant, J. Belton Watson, which had been purchased by him from William A. Neal for the sum of $3,968.39, and also that said J. Matt Cooley was entitled to a judgment against William A. Neal for $113.59. From this decree the defendant, William A. Neal, has alone appealed. The decree of Judge Earle and the grounds of appeal therefrom must appear in the report of this cause.

6—50

We deem it important, in order that the issues now be-fore *us* for decision may be correctly understood, that a sum-mary of *the findings of fact* and conclusions of law by the Circuit Judge should be stated just here, and at the same time it will be repeated that no party to this action appeals from Judge Earle but the defendant, W. A. Neal. As to the findings of fact: *First.* That on March 3, 1881, Wm. A. Neal executed and delivered the bond and mortgage set forth in the complaint to Mary E. Newell, mother of the plaintiff; that on or about January 17th, 1882, the said Mary E. Newell purchased from her father, A. M. Neal, a certain tract of land for $2,500, and in part payment assigned and transferred to said A. M. Neal the bond and mortgage set up herein. *Second.* That Mary E. Newell purchased the tract of land from her father, A. M. Neal, to enable him to pay off some mortgage debts which were liens on the tract of land so purchased, and also liens on a large tract of land that day conveyed by A. M. Neal to the children of Mrs. Mary E. Newell. *Third.* That at the time of the as-signment of said bond and mortgage to her father, A. M. Neal, it was agreed between them (the assignor and assignee) that said bond and mortgage were to be applied to the ex-tinguishment of the mortgage or lien debts on said lands. *Fourth.* That A. M. Neal did not collect the bond and mort-gage so assigned to him by Mary E. Newell, and apply the same to the extinguishment of the mortgage liens on said lands, but, on the contrary, in violation of his agreement with the assignor, satisfied said mortgage of record on the 7th day of February, 1888. *Fifth.* That Wm. A. Neal does not claim to have paid to his father, A. M. Neal, the debt of $1,000 and the interest thereon, but that his father vol-untarily cancelled and satisfied the same. *Sixth.* That the plaintiff knew of the assignment of the bond and mortgage now in suit by his mother, Mary E. Newell, to her father, A. M. Neal, at the time it was made, and also that he knew, in the spring of the year 1888, as well as did his mother, that A. M. Neal had cancelled the same and entered satis-

faction thereof of record. *Seventh.* That subsequent to the
7th day of February, 1888, J. Belton Watson, to wit: on 22d
December, 1888, purchased from W. A. Neal the tract of
land for full value and without any notice of the agreement
between the original mortgagee, Mary E. Newell, and her
assignee, A. M. Neal, and without notice that A. M. Neal
had received the mortgage on the agreement to collect and
apply the proceeds thereof to the payment of his mortgage
debts; that J. Belton Watson exerted the proper diligence
to learn if there were any defects in the title to the lands—
reciting those several efforts. *Eighth.* That the bond and
mortgage were assigned to the plaintiff on the 25th July,
1894, the bond at that time being lost, as it is now claimed
by plaintiff. *Ninth.* That the land conveyed to Mary E.
Newell by her father, A. M. Neal, has not been sold to pay
any mortgages over the same executed by A. M. Neal, but
that said mortgage liens created by A. M. Neal on such
land have been satisfied by the sale of other lands conveyed
by said A. M. Neal, in which Mary E. Newell had no bene-
ficial interest.

The Circuit Judge concluded as law, based upon these
findings, that J. Belton Watson, as before remarked, was
entitled to the protection of the doctrine of innocent pur-
chaser for value without notice. In this conclusion
all acquiesce. But he held W. A. Neal responsible
on his bond, and gave judgment against him thereon.
We cannot accept such a conclusion. Why should W. A.
Neal be held responsible on this bond, which was satisfied
and cancelled by the legal owner and holder thereof? It
is attempted to bottom this idea upon some trust relation
towards the same created by A. M. Neal with Mrs. Mary
E. Newell, in 1888. It would be well to inquire how this
trust relation was established by and between A. M. Neal
and Mrs. Newell. There is no doubt, nor can there be any
doubt, that Mrs. Mary E. Newell transferred this bond to
her father, A. M. Neal, in part payment of a tract of land
conveyed to her by the said A. M. Neal; it was received by

A. M. Neal as $1,000 in part payment of a tract of land valued and conveyed as amounting in value to more than $2,500. Now, A. M. Neal owned the land he conveyed to Mrs. Newell, and his conveyance of this land to Mrs. Newell was for a valuable consideration. If this had not been true, the plaintiffs in the case of *Watson* v. *Neal et al.*, 38 S. C., 90, would have had their judgment for the sale of Mrs. Newell's land as that of A. M. Neal. This case just cited was an action by persons holding mortgages executed by A. M. Neal on lands which, after he had executed the mortgages, he conveyed by different deeds and at different times to his children and grand-children, and to this suit A. M. Neal and his children and grand-children, who had received such deeds, were made parties to foreclose such mortgages. The defendants insisted that, while the whole of the lands conveyed by A. M. Neal were liable to sale under a foreclosure, yet that, as between themselves, the sales should be decreed to be made in the inverse order of their alienation; also, that as Mrs. Newell owed $1,000 on her purchase of land from her father, she should be required to pay that sum on the mortgages set up in that case. But it seems that, notwithstanding Mrs. Newell owed this $1,000, yet the decree required a 600 acre tract of land, which was latest in point of time of the conveyances made by A. M. Neal, to be sold first, and its sale realized a sum sufficient to pay off all the mortgages. Hence, Mrs. Newell escaped paying to the mortgage creditors this $1,000 that she still owed of the purchase money for the 350 acres conveyed to her, although the decree required and adjudged that she should pay this $1,000 she owed her father on the mortgage liens as a part payment thereof, and the Supreme Court adjudged that the Circuit Court decree should be affirmed. Now, the father, A. M. Neal, departed this life intestate while the suit of Watson *et al.* v. Neal *et al.* was pending. Thus we find that Mrs. Newell, plaintiff's assignor, was not required to pay the $1,000 and interest that she owed her father for her land in that action. Then, when the suit

was ended, for the sake of argument, admit that she had an equity under her original agreement to compel him (A. M. Neal) to apply the proceeds of the W. A. Neal bond of $1,000 to the payment of the mortgages which were liens on lands conveyed to her children, how could she ask a court of equity to enforce an equity which she herself, by her failure to pay the $1,000 due by her to her father, A. M. Neal, had frustrated? After her father's death, it was in her power, if she had an equity, to have the $1,000, represented by W. A. Neal's bond, settled in an action with the administrator of her deceased father's estate. But who ever heard of a purchaser of land claiming an equity in the application of the purchase money she is to pay for the land, except to the relief of those lands so conveyed to her. If she is allowed to pay the $1,000 of the purchase money in the bond and mortgage she owns, why the moment she assigns the bond and mortgage its ownership is in her assignee, with an equity in her, under a contract therefor to compel her grantor to apply the purchase money to the satisfaction of any legal liens subsisting against the land she has purchased. It is true, the grantee might contract with her to apply such purchase money to the payment of other liens on lands than her own, but a breach of such a contract as to the application of such proceeds to the extinguishment of the liens on other people's land would not cause an equity in her to such proceeds. The legal ownership of the W. A. Neal bond and mortgage was in her father, A. M. Neal, and he might be liable as for a breach of contract, when he (A. M. Neal) entered satisfaction of the bond and mortgage on record; but we are not able to see that any equity existed in Mrs. Newell in said bond and mortgage, under which she could claim to be the owner of the same, and as such owner might assign the same to this plaintiff. Why, look at this proposition in the light of common sense: Mrs. Newell purchased from A. M. Neal 350 acres of land, for which she agreed to pay $2,500. Of this sum she paid $500 in money, $1,000 in W. A. Neal's

bond and mortgage, and the remaining $1,000 in her own bond and a mortgage of the lands sold to her. When A. M. Neal conveyed her the land, she owned the land and he owned the purchase money, made up of cash and bonds. No person has ever evicted her, nor has she been required to pay a dollar to discharge any liens on said lands created by A. M. Neal. She still owns and occupies the lands. How could she, or any assignee of hers, while she still owns this 350 acres of land, claim that she is the owner, or that her assignee is the owner, of any of the purchase money she paid A. M. Neal for his lands? To state the proposition is to answer the question—it cannot be; yet that is what the Circuit Judge has adjudged to be the right of her assignee.

Besides all this, it is not shown that W. A. Neal is any party to any such agreement. It may be said that W. A. Neal evidenced his agreement to this equity by signing an agreement with his father, A. M. Neal, in 1882, which agreement was prepared in the names, as makers thereof, of A. M. Neal, W. A. Neal, Mary E. Newell, and Sarah C. Neal, on the 26th January, 1882, but it is shown that Mary E. Newell and Sarah C. Neal failed and refused to sign such agreement. In the case of Watson *et al v.* Neal *et al., supra,* the Circuit Judge said of this agreement: "2. That as to the alleged agreement between A. M. Neal, W. A. Neal, Mary E. Newell, and Sarah C. Neal, by which the three last named (children) were to pay the debts of A. M. Neal, I conclude from the evidence that no such agreement was made, either between A. M. Neal and his said children or between the children themselves. Mrs. S. C. Neal and Mrs. Newell repudiated the paper." Now, what does the Supreme Court say at page 98? Here is the language of the Court: "Second. It is claimed 'that the Judge erred in finding that there was no agreement between A. M. Neal, W. A. Neal, S. C. Neal, and Mary E. Newell, by which the three last named parties (the children) were to pay the debts of A. M. Neal, in consideration of his conveyance of lands to them, and that Mrs. Neal and Mrs. Newell repudiated the

same; when he should have held that there was such agreement, and compelled the lands of the parties to contribute to the payment of the debts of A. M. Neal, according to the terms of said agreement,' &c.   It may have been unfortunate that the children of A. M. Neal did not adjust their family matters as to property before the death of the father, A. M. Neal.   It seems that such adjustment was talked of, and some effort made towards its accomplishment, but it certainly failed, and that failure has produced much of the unusual confusion and difficulty in the case.   There were three children, and only one of these, in the absence of the others, signed a paper for that purpose.   The others did not sign, but, on the contrary, repudiated it.   In the form of an agreement with mutual covenants, *inter partes*, it was never signed by the parties or delivered, but was left, for signature by the parties, in the possession of the friend who had prepared it.   We know of no principle that would justify us in declaring that paper to be a completed binding covenant. We cannot say that the Circuit Judge committed error," &c. It will be noticed that the master's report in regard to this agreement used this language: "That A. M. Neal did not regard it as a valid agreement, all parties not signing, is evident from his subsequent conduct with reference to his assets.   All the parties have stood by and seen him dealing with his property in a manner inconsistent with the provisions of the supposed agreement," &c.   When, therefore, the defendant, W. A. Neal, called to his aid the doctrine of *res judicata*, the plaintiff *first* denies that such doctrine is here applicable, and *second*, that the agreement is not necessary to his cause, for he relies specifically upon an agreement to the same effect incorporated in the assignment of the bond by his mother, Mary E. Newell, to A. M. Neal.   We think the doctrine of *res judicata* was applicable, so far as this agreement was concerned.   The case of *Hart* v. *Bates*, 17 S. C., 35, holds that three things are necessary to make out this defense: 1. The parties must be the same, or their privies.   2. The subject matter must be the same.   3. The

precise point must have been ruled. Mary E. Newell and her assignee, the plaintiff, Alfred T. Newell, were parties to the suit of Watson *et al. v.* Neal *et al., supra.* 2. The subject matter was the same, the *agreement.* 3. The validity of this agreement was ruled upon by this Court in its judgment. Is the plaintiff safe in his second ground? We think not. It was the duty of Mrs. Newell, the assignor of plaintiff, to have produced all the proofs in her power when the subject matter of the "agreement" was before the Circuit Court, in the case of Watson *et al. v.* Neal *et al.*—she did not then pretend that the assignment written on the bond now attempted to be set up, which she now claims was signed by her, was to the same effect as the "agreement" then before the Court. She has had her day in Court on that matter, and it is not now in her power nor in that of her assignee to set up this same agreement—once repudiated by the Court—in a second action.

But, again, we do not see why W. A. Neal may not invoke the statute of limitations for a defense against the bond. Let it be remembered that the Circuit Judge has held that A. M. Neal, while he was the legal owner of this bond and the mortgage intended to secure it, did cancel and satisfy both of record on the 7th day of February, 1888. No appeal has been taken by the plaintiff from such finding of fact by the Circuit Judge. This suit was commenced 4th September, 1894. Certainly more than six years have elapsed since that date. Both plaintiff and his assignor knew the facts at the date of their occurrence, or, in the language of the Circuit Judge, in the spring of 1888. No mortgage now exists. What more exists against W. A. Neal than the bond now sued on? It was a bond for the payment of money only. Six years is a bar to an action on such an instrument. The statute of limitations was pleaded formally by the defendant, W. A. Neal. Sections 111 and 112 of the Code of Procedure. We do not sustain the first exception, relating, as it does, to the form of the action in reference to a lost bond. If error—

technical—had existed, it was curable by an amendment, and this being an action on the equity side of the Court, if such objection was not pressed so as to obtain a ruling thereon from the Circuit Judge, we will not interfere.

We sustain the second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, and fourteenth exceptions.

As to the thirteenth, we cannot sustain the proposition there embodied. It is competent for people to make contracts between themselves, and we would hesitate to say that a part of a contract was upon valuable consideration and the other part of such contract was without a consideration legal in its effects. In the abundance of caution, we take this position. And we may add, in concluding, that the exceptions sustained by us seem to be sustained by the views we have expressed without regard to the order of the exceptions as presented by the appellant.

It is the judgment of this Court, that the judgment of the Circuit Court, where the same has been appealed from, and in no other matters, is reversed, so far as the appellant, Wm. A. Neal, is concerned. And it is further adjudged, that the case be remanded to the Circuit Court to carry into effect so much of the judgment as was not appealed from by Wm. A. Neal.